UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PAULA RAY DOTSON,              )
      Plaintiff,          )
                   )
v.                     )     Case No. 1:11-cv-213
                   )     (Collier/Carter)
MICHAEL J. ASTRUE       )
Commissioner of Social Security   )

REPORT AND RECOMMENDATION

     This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule

72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the

disposition of the plaintiff's Motion for Summary Judgment (Doc. 9) and defendant's Motion for

Summary Judgment (Doc. 11).

     This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the

final decision of the Commissioner of Social Security denying the plaintiff a period of disability

and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

     For reasons that follow, I RECOMMEND the decision of the Commissioner be

AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

     Plaintiff was born in 1969, and she was 41 years old at the time of the ALJ's decision (Tr.

30). She attended school until the twelfth grade and later received a General Equivalency

Diploma (Tr. 32, 230). She is married, has a valid driver's license, and lives with her husband in

an apartment (Tr. 30-31). Plaintiff's past relevant work was as a cook, cashier, leasing agent, fast

1

food worker, and accounts payable clerk (Tr. 57, 223, 233-44).

## Claim for Benefits

On May 20, 2008, Plaintiff protectively applied for disability insurance benefits under Title II of the Social Security Act, alleging that she became disabled on August 16, 2007 (Tr. 28, 206-08). Plaintiff's application was denied initially, on reconsideration, and following a hearing, by an administrative law judge (ALJ) on November 9, 2010 (Tr. 14-22, 99-100).

On July 6, 2011, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), rendering the ALJ's decision final. *See* 20 C.F.R. §§ 404.981, 422.210(a) (2011). Plaintiff exhausted all administrative remedies and timely filed this action; therefore, the Court has jurisdiction pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in

2

significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through

3

June 30, 2012.

2.  The claimant has not engaged in substantial gainful activity since August 16, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: kidney disease; hypertension; hypothyroidism; residual back pain status post surgery for scoliosis (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a). The claimant: can lift 10 pounds occasionally, less than 10 pounds frequently; stand/walk 4 hours; sit up to 6 hours; never climb ladders; occasionally climb stairs, kneel, crouch, crawl; must avoid hazards including dangerous machinery and unprotected heights; and is limited to superficial contact with the general public.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.  The claimant was born on xxxxxxx xx, 1969 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 16, 2007, through the date of this decision (20 C.F.R. 404.1520(g)).

(Tr. 16-22).

I.   Whether substantial evidence supports the administrative law judge's residual functional capacity determination.

II.  Whether substantial evidence supports the administrative law judge's finding that plaintiff is not disabled because she can perform sedentary jobs that exist in significant numbers in the national economy.

Relevant Facts

Medical Evidence

In May 2006, more than one year before the alleged disability onset date, Plaintiff began treating with primary care physician Michael Wood, M.D., complaining of fatigue and nausea (Tr. 315). In June 2006, Dr. Wood noted that Plaintiff complained of pain above the pelvic area, increased urinary frequency (possible urinary tract infection), and abdominal pain (Tr. 314). In December 2006, Dr. Wood noted Plaintiff complained of constipation and fatigue. Dr. Wood diagnosed fatigue, hypertension, and a renal issue of unknown etiology (Tr. 313).

On October 2, 2007, Plaintiff returned to Dr. Wood complaining of increased urinary frequency and irregular menstrual cycle (Tr. 311). Upon exam, Dr. Wood reported normal musculoskeletal, neurologic, and psychiatric findings. Dr. Wood diagnosed scoliosis, hypertension, hypothyroidism, colon polyps, and ordered diagnostic tests (Tr. 312). An abdominal ultrasound was normal; no evidence of aneurism was demonstrated (Tr. 352). In November 2007, a gallbladder ultrasound was normal with some thinning of the right kidney cortex of questionable etiology (Tr. 320). A gallbladder (HIDA) scan was normal with no evidence of cystic or common duct obstruction and normal ejection fraction of 99% (Tr. 317). A renal sonogram showed normal ratios, resistive indices, and peak systolic velocities (Tr. 318-19).

5

In December 2007, Plaintiff was evaluated by kidney specialist Brant G. Holt, M.D., who assessed hypertension, tachycardia, urinary tract infection, and moderate chronic kidney disease (Tr. 330). Plaintiff admitted to abusing nonsteroidal anti-inflammatory drugs (NSAIDs) for "many, many years" (Tr. 331). Dr. Holt noted in activities, Plaintiff was completely independent, and she was able to do all chores without slowness (Tr. 332). Besides mild diffuse abdominal tenderness and trace bilateral lower extremity edema, Dr. Holt reported normal physical exam findings, including speech, language, cognitive functions, emotional stability, and muscle tone/strength (Tr. 332-33). Dr. Holt did not opine any functional restrictions (Tr. 330-33).

In January 2008, Dr. Holt diagnosed Plaintiff with left foot pain, chronic kidney disease (moderate), small kidneys with thinning of the cortex, previous NSAID abuse - discontinued, and history of urinary incontinence with urinary tract infections (Tr. 296). Plaintiff advised that, in November 2007, she dropped a television on her left foot, but an x-ray showed no abnormalities and "she eventually got over the pain," but noticed some redness and pain when she walks (Tr. 296). Plaintiff noted that, while her blood pressure was still elevated, she was no longer having rapid heartbeat, and she was otherwise "doing well" with no shortness of breath, chest pain, or painful urination (Tr. 297). Dr. Holt noted Plaintiff was completely independent in activities, and she was able to do all chores without slowness (Tr. 297). Besides left foot discomfort with ambulation, Dr. Holt reported normal physical exam findings, including speech, language, cognitive functions, emotional stability, and muscle tone/strength (Tr. 297-98). Dr. Holt did not opine any functional restrictions (Tr. 296-98).

In February 2008, Plaintiff was evaluated by vascular surgeon Stuart Myers, M.D., for

6

pain and edema in her feet (Tr. 309). Dr. Myers reported normal physical exam findings and recommended diagnostic tests, opining that Plaintiff had superficial femoral artery disease and renal dysfunction (Tr. 310). In March 2008, renal and lower arterial tests were normal except for elevated velocity in the celiac artery which suggested hemodynamically significant stenosis (Tr. 408-10). Dr. Myers opined this finding might be the beginning of significant stenosis, but noted that Plaintiff had no symptoms at that time (Tr. 401). Dr. Myers recommended a surgical test (arteriogram) on Plaintiff's left leg (Tr. 401). On March 25, 2008, Dr. Myers performed the arteriogram to rule out ischemia and renal artery stenosis (Tr. 302-03). In a letter to Dr. Holt, dated April 14, 2008, Dr. Myers advised that the arteriogram showed the following: (1) vessels were "fairly good," (2) left and right renal arteries "did not seem to have any stenosis," and (3) aorta and lower arteries were patent but small (Tr. 399). Dr. Myers opined Plaintiff "just has small vessels" and may have some type of underlying arterial inflammation, recommending future routine blood work (Tr. 399). Dr. Myers did not opine any functional restrictions (Tr. 399).

In October 2008, consultative examining physician Emelito Pinga, M.D., reported largely normal musculoskeletal and neurologic findings, including (1) normal gait with slightly slowed pace; (2) no muscle atrophy in upper or lower extremities; (3) no leg edema or calf tenderness in lower extremities; and (4) full motor strength in hands, arms, and legs (Tr. 375-76). His clinical impression was:

1. Congenital dextroscoliosis of the dorsolumbar spine, status post reconstructive surgery with implantation of Harrison Rod, on therapy with Tylenol tablet.

2. Chronic renal insufficiency with azotemia, by history.

3. Hypothyroidism, on therapy with levothyroxine tablets.

4. Hypertensive atherosclerotic cardiovascular disease with peripheral arterial insufficiency of the right and left leg.

5. Congenital small mouth with narrow aperture, status post reconstructive surgery of the oral cavity, status post speech therapy.

6. Gastroesophageal reflux disease, on therapy with ranitidine tablet.

7. Hypertension, the blood pressure is under control with carvedilol and hydrochlorothiazide tablet.

Tr. 376.

Dr. Pinga opined that Plaintiff could (1) occasionally lift up to 10 pounds in an 8-hour workday, cumulatively with rest period of 15 minutes within 1-hour interval; and (2) stand or walk up to 4 hours, sit up to 6 hours, in an 8-hour workday (Tr. 377).

Reviewing physician James P. Gregory, M.D., opined Plaintiff could (1) lift or carry up to 10 pounds frequently, 20 pounds occasionally; (2) stand or walk at least 2 hours, sit up about 6 hours, in an 8-hour workday with normal breaks; and (3) occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, but never ladders, ropes, or scaffolds (Tr. 379-80).

On April 15, 2009, more than 18 months after last treating Plaintiff, Dr. Wood completed a checkbox form indicating various functional restrictions (Tr. 395-98). In this medical assessment section form he diagnosed Hypothyroid, high blood pressure, scoliosis, Harrington Rod in back, vascular kidney disease. He assessed functional limitations as follows:

(1) sit continuously for 45 minutes, up to 4 hours total in an 8-hour workday with normal breaks; and (2) due to "pain/paresthesia," she would require 8 unscheduled breaks of 30 minutes each in an 8-hour workday (Tr. 397).

8

<u>Testimony of the Vocational Expert</u>

The ALJ determined that Plaintiff had the residual functional capacity (RFC)[1] to perform a modified range of sedentary work: (1) lift up to 10 pounds occasionally, less than 10 pounds frequently; (2) stand or walk up to 4 hours, sit up to 6 hours, in an 8-hour workday; (3) occasionally climb stairs, kneel, crouch, crawl, but never climb ladders; (4) avoid hazards such as dangerous machinery and unprotected heights; and (5) only superficial contact with the general public (Tr. 17, Finding No. 5). Based on Plaintiff's RFC as found by the ALJ and Plaintiff's vocational profile (age, education, past work experience), the ALJ elicited testimony from a vocational expert (VE) that Plaintiff can perform sedentary jobs, such as addresser, ticket checker, and surveillance system monitor, that exist in significant numbers in the national economy[2] (Tr. 58-60).

<u>Analysis</u>

I.    Whether substantial evidence supports the administrative law judge's residual functional capacity determination.

After considering all record evidence and testimony, the ALJ determined Plaintiff had the RFC to perform a modified range of sedentary work: (1) lift up to 10 pounds occasionally, less than 10 pounds frequently; (2) stand or walk up to 4 hours, sit up to 6 hours, in an 8-hour workday; (3) occasionally climb stairs, kneel, crouch, crawl, but never climb ladders; (4) avoid

---

[1]  RFC is the most Plaintiff can do in a work setting despite any limitations that may result from her impairments. <u>See</u> 20 C.F.R. § 404.1545(a)(1).

[2]  The respective number of available jobs is as follows: addresser - 2,000+ state, 8,000+ national; ticket checker - 5,000+ state, 10,000+ national; and surveillance system monitor - 2,000+ state, 10,000+ national (Tr. 59-60).

hazards such as dangerous machinery and unprotected heights; and (5) only superficial contact with the general public (Tr. 17, Finding No. 5).

Plaintiff first argues the ALJ, in reaching this RFC assessment, failed to comply with SSR 96-8p in not providing reasons for rejecting the opinions of Dr. Wood. She concedes the ALJ stated that he found "the opinions on functional abilities to be fairly consistent" and "afforded all of the opinions some weight," but argues he failed to explain why he did not accept the opinion of Dr. Wood, a treating physician.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the so-called treating physician rule, which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Blakley v. Commissioner,* 581 F.3d 399, 406 (6th Cir. 2009). The rationale behind the rule is that treating physicians are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence. 20 C.F.R. 404.1527(d)(2). The ALJ must give a treating source opinion controlling weight if the treating source opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. *Ibid.* Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much weight to give it; in doing so, the ALJ must take into account the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other

10

relevant factors tending to support or contradict the opinion. 20 C.F.R. 404.1527(d)(2)-(6).

*Friend v. Commissioner,* 375 Fed.Appx. 543, 550 (6th Cir. 2010). However, the Plaintiff bears

the burden of proving disability. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230,

1233 (6th Cir. 1993); 20 C.F.R. § 404.1512(a) (a claimant "must furnish medical and other

evidence we can use to reach conclusions about [her] impairment(s)"); 20 C.F.R. § 404.1512(c)

(a claimant must provide evidence showing how her impairments affect her functioning during

the alleged period of disability); *Foster,* 279 F.3d at 353 ("The burden lies with the claimant to

prove that she is disabled"). The ALJ is not always bound to accept the treating physician's

opinion. At the hearing stage, the ALJ is responsible for determining Plaintiff's RFC. *See* 20

C.F.R. § 404.1546(c); *see also* 20 C.F.R. § 404.1527(e)(2) (while medical source opinions are

considered, the final responsibility for deciding RFC is reserved to the Commissioner).

In this case, after his RFC Assessment, the ALJ sets out the evidence upon which he

relied. First he points to the opinion of Dr. Brant G. Holt:

> On December 14, 2007, Dr. Brant G. Holt, a nephrologist, evaluated the claimant
> on referral by Dr. Wood (3F). Dr. Holt reported that the claimant was treated for
> hypertension, and had abused NSAIDS for many years. The claimant complained
> of urinary frequency and incontinence, dyspnea on exertion, occasional dizziness,
> and occasional chest pain with reportedly negative cardiac work-up. Dr. Holt
> noted that the claimant had elevated creatine for several years. He diagnosed
> chronic kidney disease, stage III (moderate), hypertension tachycardia, and UTI,
> and ordered further labs and a CT (3F). In January 2008, a CT of the abdomen
> and pelvis showed some scarring of the kidneys and right lung base but no acute
> findings (3F).
>
> On January 22, 2008, Dr. Holt saw the claimant in follow-up of her kidney
> disease, small kidneys, and a recent complaint of left foot pain (1F). Dr. Holt
> reported that the claimant was "[c]ompletely independent" with activity and was
> "[a]ble to do all chores w/o slowness." The claimant denied chest pain, dyspenea
> on exertion, abdominal pain, and nausea. Clinical examination findings were
> mostly normal. Speech and language were within normal limits. With regard to

11

the foot, Dr. Holt observed no erythema or warmth, no significant tenderness, no
obvious signs of gout, and good capillary refill of the toes but decreased pulses.
The claimant also had lower extremity edema and uncontrolled hypertension for
which an additional medication was prescribed (1F).

Tr. 19.


Next he refers to the findings of Stuart Myers, M.D:

On February 11, 2008, the claimant was evaluated by Stuart Myers, M.D., a
surgeon, for her complaints of edema and pain in the feet when walking 100 feet.
She also had a bluish color of her toes. The claimant denied symptoms such as
shortness of breath, chest pain, or abdominal pain. Dr. Myers believed the
claimant had superficial femoral artery disease and noted that she also had renal
dysfunction. He did not find signs of venous insufficiency. Dr. Myers performed
an arteriogram on March 25, 2008. On follow-up April 11, 2008, Dr. Myers
reported that the testing showed "fairly good" vessels, no stenosis of the right and
left renal arteries, patent but small aorta and lower arteries, and a patent posterior
tibial artery. Dr. Myers concluded that the claimant "just has small vessels" but
should be followed for a possible underlying arteritis. He released the claimant on
an as-needed basis (11F).

Tr. 19.

He then refers to the consultative examination performed by Emelito Pinga, M.D.:

The claimant underwent a consultative examination performed by Emelito Pinga,
M.D., on October 7, 2008 (5F). The claimant reported kidney and thyroid
problems, vascular disease, GERD, and back and speech problems since she was
a child. For her scoliosis, the claimant reportedly underwent reconstructive
surgery as a child, with implantation of a Harrington Rod. She now took Tylenol
for her pain. The claimant also reportedly had pediatric surgery for a congenital
small mouth.

Dr. Pinga found that the claimant did not have gross slurring, stammering, or
stuttering, and exhibited no difficulties with hearing, speech, or cognition. There
were no neck, heart, or abdominal abnormalities on exam. The claimant also had
mostly full range of motion of all joints and negative straight leg raising. Dr.
Pinga noted a 15-degree spinal deformity related to residual scoliosis. Gait was
normal, though walking was at a "slightly slowed pace." Notably, there was no
edema of the lower extremities. Dr. Pinga opined that the claimant could sit 6
hours in an 8-hour workday, walk or stand 4 hours in an 8-hour work day, and

12

would have "limitations in the occasional lifting of weights of 10 pounds within an 8-hour work day cumulatively with rest period of fifteen minutes within a 1-hour interval" (5F).

Tr. 19-20.

He refers also to the opinion of the non-examining State Agency Physician:

James P. Gregory, M.D., a State Agency consultant, reviewed the record through October 16, 2008, and found the claimant capable of lifting 20 pounds occasionally, 10 pounds frequently, standing/walking 4 hours due to back problems, and sitting 6 hours. In addition, she was limited to occasionally performing postural activities except never climbing ladders (6F).

Tr. 20.

The ALJ then directly refers to the Medical Assessment Form completed by Dr. Wood

which assessment would result in disability if accepted by the ALJ:

On April 15, 2009, as amended September 20, 2012, Dr. Wood issued a Thyroid Disorder Medical Assessment Form (10F). He noted that the claimant has symptoms including fatigue, hoarseness, weakness, muscle cramps, and frequent headaches, as well as mild pain/paresthesia and anxiety. Dr. Wood opined that the claimant can sit 45 minutes at a time, 4 hours per day, stand 30 minutes at a time, and stand/walk 4 hours per day. She would also need 8 unscheduled breaks and would have to rest 30 minutes before returning to work. Further, Dr. Wood noted that the claimant can rarely lift less than 10 pounds, occasionally twist and stoop, and has no limitations on the use of her upper extremities. Dr. Wood indicated that the claimant would miss work less than once per month (10F).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant's testimony regarding her various ailments appears exaggerated in comparison to the objective medical evidence. For example, her claims of "excruciating pain," gout, daily nausea, severe speech problems such that she is not understood over the phone, arthritis in every joint, and side effects from medications including debilitating drowsiness, are simply not substantiated in the record.

13

The ALJ then explains his decision after consideration of the entire record:

The medical records do show limitations but not total disability. I find the opinions on functional abilities to be fairly consistent. I have afforded all of the opinions some weight, and I have thoroughly reviewed the longitudinal record. The claimant's own testimony also suggests a greater ability than alleged in this claim. The claimant did work after her alleged onset date, and gave various reasons for stopping work including her speech problem, a hospitalization, and back pain. She also apparently received unemployment after she was let go from a job, indicating that the claimant held herself out as available to work.

In sum, I find that the above residual functional capacity assessment is supported by objective evidence of record and reasonably accounts for the claimant's demonstrated functional deficiencies.

Tr. 20.

The basic question is whether there is substantial evidence in the record to support this conclusion. Like many cases there is evidence, which if accepted by the ALJ, would lead to a finding of disability. Plaintiff's own testimony would also support this. However there is other evidence referred to by the ALJ to support a contrary position.

As the Commissioner notes, the ALJ's RFC determination for a modified range of sedentary work was, at least in part, more generous to Plaintiff than opined by examining physician Dr. Pinga and reviewing physician Dr. Gregory (Tr. 377, 379-80). *See* 20 C.F.R. § 404.1527(b) ("we will always consider the medical opinions in your case record together with the rest of the relevant evidence"); 20 C.F.R. 404.1545(a)(3) (the RFC determination is "based on all of the relevant medical and other evidence"). Further, nearly all of Plaintiff's treatment after the alleged disability onset date on August 16, 2007, was with Dr. Holt and Dr. Myers, neither of whom opined Plaintiff had *any* functional limitations or restrictions (Tr. 296-303, 309-10, 330-33, 399-402). *See Longworth*, 402 F.3d at 596 (the absence of opined limitations from

14

claimant's treating physician constituted substantial evidence supporting the ALJ's finding of non-disability); *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) (absence of assigned activity restrictions from claimant's treating physicians supported the ALJ's finding of non-disability). In December 2007 and January 2008, Dr. Holt noted that Plaintiff was "completely independent" in activities, and she could perform all chores without slowness (Tr. 297, 332). After several diagnostic tests and procedures, in April 2008, Dr. Myers opined that Plaintiff had "fairly good" vessels, just small, and she should follow up only "as needed" (Tr. 399).

Plaintiff argues that, in determining her RFC, the ALJ should have adopted the limitations on sitting and need for breaks indicated on a form completed by Dr. Wood in April 2009 (Tr. 397-98) (Plaintiff's Brief on the Merits, pp 3-4). Dr. Wood's opinion, however, was entitled to controlling weight *only if* it was well-supported by medically acceptable clinical and diagnostic evidence and not inconsistent with other substantial record evidence. *See* 20 C.F.R. ç 404.1527(d)(2). The Sixth Circuit has consistently held that an ALJ is not always bound by a treating source opinion. *See Warner*, 375 F.3d at 391 (treating physician's opinion was properly discounted as inconsistent with substantial record evidence); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (the absence of supporting clinical and diagnostic evidence was "a sufficiently valid reason not to accept the opinions of a treating medical doctor").

Also, one internal inconsistency is noted by the Commissioner. The opinion related to pain/paresthesia. Dr. Wood's opinion was that Plaintiff would require eight unscheduled breaks of thirty minutes each in an 8-hour day. Earlier in his assessment form Dr. Wood assessed Plaintiff's pain/paresthesia to be mild (Tr. 395, 397-398).

In the decision, the ALJ expressly considered the limitations opined by Dr. Wood in the

15

form he completed more than 18 months after last treating Plaintiff, as well as the limitations opined by Dr. Pinga and Dr. Gregory (Tr. 19-20). The ALJ afforded "all of the opinions some weight," and implicitly discounted the more severe limitations, explaining "[t]he medical records do show limitations but not total disability" (Tr. 20). As the ALJ observed (Tr. 20), other record evidence contradicted more severe limitations beyond Plaintiff's RFC for a modified range of sedentary work, including (1) Plaintiff worked two different full-time jobs as a leasing agent in 2007 and 2008 after the alleged disability onset date; (2) Plaintiff gave varying and inconsistent reasons as to why she stopped working at these jobs (speech problem, hospitalization, and back pain); and (3) Plaintiff received unemployment benefits in 2008 and 2009, indicating that she held herself out as available to work during that time (Tr. 33-35, 202-05). *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (a claimant's continued ability to work undermined allegation of disabling limitations).

Dr. Wood's form was completed 18 months after he had last examined or treated Plaintiff. Dr. Wood did not explain the more severe limitations opined in this checkbox form or otherwise provide any supporting medical signs, laboratory findings, or diagnostic test results (Tr. 395-98). *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *Walters*, 127 F.3d at 530 (the absence of supporting clinical or diagnostic evidence is "a sufficiently valid reason not to accept the opinions of a

treating medical doctor"). As the Seventh Circuit has recognized, "[w]e must keep in mind the biases that a treating physician may bring to the disability evaluation." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (noting that a claimant's physician may wish to do a favor for a friend and client and too quickly find disability); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (checkmark opinion on a multiple choice form is "not particularly informative"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to a check a box or fill in a blank are weak evidence at best.").

Plaintiff argues that she takes a number of "narcotic pain medications"[3] that cause drowsiness and thus preclude her from any employment (Tr. 63-67) (Doc. 10, Plaintiff's Brief at 4). As the ALJ clarified with the VE at the hearing, whether a person is precluded from employment based on drowsiness from medication depends on the "degree of drowsiness" (Tr. 67). Also, there is evidence contradicting her claim of disabling drowsiness from her medication. Plaintiff worked a full-time job until May 2008, leaving not due to drowsiness but because "she had a lot of doctor appointments and a surgery within 3 months"[4] (Tr. 34-35, 252). The record has no complaints of drowsiness from medication to any of Plaintiff's treating physicians other than two occasions in 2006, before the alleged disability onset date, when Dr. Wood noted that Plaintiff complained of fatigue (Tr. 296-414, 313, 316). Further, in the form completed by Dr. Wood in April 2009, when specifically asked to identify "any side effects of

---

[3] At the consultative exam in October 2008, three months after she stopped working, Plaintiff told Dr. Pinga that she was currently taking Tylenol, not narcotic pain medication, "as needed" for her back and leg pain (Tr. 372-73).

[4] Plaintiff later appeared to suggest this job may have ended when her company "changed management hands" (Tr. 35).

any medications which may have implications for working," Dr. Wood did not list any side effects, leaving the checkbox for "drowsiness/sedation" blank (Tr. 396). I therefore conclude the ALJ properly determined that her claim of debilitating drowsiness from medication was "simply not substantiated in the record" (Tr. 20). *See* 20 C.F.R. § 404.1529(a) ("statements about your pain and other [subjective] symptoms will not alone establish that you are disabled").

Further, despite alleging disability as of August 2007, Plaintiff worked until May 2008, and was *promoted* from the position of leasing agent to assistant property manager (Tr. 35). While Plaintiff alleged that she was fired in May 2008 because of her health, the record shows she did not seek or receive any medical treatment after May 2008 (Tr. 37, 296-414). *See* 20 C.F.R. § 404.1529(c)(3)(v) (treatment received for relief of pain or other symptoms is a relevant factor in assessing the credibility of allegedly disabling symptoms); *Blacha*, 927 F.2d at 231 (the claimant's failure to seek treatment undercut claim of disabling symptoms); SSR 96-7p ("statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). Plaintiff did attend a consultative exam with Dr. Pinga in October 2008 (Tr. 372). Dr. Wood completed a checkbox form in April 2009, however, there is no record of a corresponding exam or treatment (Tr. 395-98). Dr. Wood treated Plaintiff only once after the alleged disability onset date on October 2, 2007, more than 18 months before he completed this form (Tr. 311, 398). *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (the treating physician doctrine *assumes* that a medical professional who has dealt with a claimant over a long period of time will have a better insight into his medical condition than a physician who has examined the claimant but once).

Based on the record as a whole, I conclude substantial evidence supports the ALJ's RFC

18

determination. The ALJ, who stands at the end of the process, has the obligation to consider the entire record evidence and, with the advantage of seeing the entire record including the hearing testimony, make the ultimate decision concerning disability. It is the province of the Commissioner to weigh the evidence. *See Richardson v. Perales* , 402 U.S. 389, 399 (1971) ("The trier of fact has the duty to resolve [the medical evidence] conflict"). I conclude that the ALJ has done so here. There is substantial evidence to support his decision.

     II.     Whether substantial evidence supports the Administrative Law Judge's finding that Plaintiff is not disabled because she can perform sedentary jobs that exist in significant numbers in the national economy.

The Commissioner determined Plaintiff "is unable to perform any past relevant work." (Tr. 20). Therefore, the burden of proof shifted to the Commissioner to establish there is other work Plaintiff can perform, considering her age, education and work experience. To meet this burden, the Commissioner may elicit testimony from a Vocational Expert through hypothetical questions that accurately portray the claimant's "individual physical and mental impairments." Plaintiff argues the ALJ's hypothetical question to the VE did not accurately portray the claimant's residual functional capacity. Plaintiff points to the evidence from the hearing which revealed that Plaintiff takes a number of narcotic pain medications which cause drowsiness. (Tr. 41-45). Plaintiff concedes the ALJ made a conclusory statement that the claimant's testimony regarding the "side effects from medications including debilitating drowsiness, are simply not substantiated in the record," but argues there is no explanation for that conclusion. Plaintiff points to the VE's testimony that "there are not any jobs that a person who experiences drowsiness can perform in the local and/or national economy." (Tr. 67). Plaintiff then argues the ALJ asked numerous questions with regard to the issue of drowsiness, and yet ignored the

expert's opinion when he denied the claim. (Tr. 65-67).

The Commissioner argues to the contrary, noting that while Plaintiff's abilities and overall physical and mental state should be accurately described, the hypothetical to the VE "is required to incorporate only those limitations accepted as credible by the finder of fact [ALJ]." *Casey*, 987 F.2d at 1235. Plaintiff argues the hypothetical should have included additional limitations on sitting and need for breaks as opined by Dr. Wood. However, I conclude the ALJ properly discounted this testimony. *See Foster*, 279 F.3d at 356 (ALJ need not include limitations in a hypothetical that were discounted as unsupported or inconsistent with the record). The ALJ was not required to accept the VE's response to an alternate hypothetical that assumed Plaintiff's testimony was fully credible or otherwise assumed limitations, such as drowsiness, that were later rejected as unsupported or inconsistent with the record. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).

I therefore conclude substantial evidence supports the ALJ's decision that Plaintiff is not disabled under the Act.

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 11) be GRANTED, and plaintiff's Motion for Summary Judgment (Doc. 9) be DENIED and the case be DISMISSED.[5]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[5]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).